**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tracy D Ferren, | No. CV-19-00598-TUC-DCB |
| Plaintiff, | **ORDER** |
| v. | |
| Westmed Incorporated, et al., | |
| Defendants. | |

Plaintiff filed this case in the United States District Court for the District of Kansas on July 9, 2019, based on the federal courts' diversity jurisdiction, 28 U.S.C. § 1332, over controversies exceeding $75,000 between citizens of different states. Plaintiff is a resident of Kansas, and Defendant Westmed Incorporated (Westmed) is incorporated in Arizona, with its principal place of business in Pima County, and Defendant McKinnon, President and Director of Westmed, resides in Colorado.

On December 23, 2019, the United States District Court in Kansas found it lacked jurisdiction over the case because the employment grievances arose in Arizona. The Kansas court transferred the case here to this Court. On July 1, 2020, the Plaintiff sought and was granted, without any objection, leave to amend or correct the Complaint to add Arizona law, including a constructive discharge claim under A.R.S. §§ 23-1501 and 1502. The Plaintiff filed the First Amended Complaint (FAC) on November 4, 2020.

In the FAC, the Plaintiff, an employee of Westmed, alleges state law claims of unlawful retaliation (demotion and constructive discharge), breach of contract, negligent

and fraudulent misrepresentation, and promissory estoppel under Kansas and Arizona law. The Plaintiff alleges that after he reported to Westmed's board in 2018 that the company was allegedly violating Food and Drug Administration (FDA) rules and regulation and state and federal employment laws, the Defendant McKinnon retaliated against him by demoting him and unilaterally changing the annual compensatory provisions, aka the Domestic Sales Compensation Program, including reducing his sales territories and number of sales managers reporting to him. Things got so bad, including his compensation was reduced below what he had been promised, that he was forced to resign, i.e., he was constructively discharged, on March 6, 2020. The negligent and fraudulent claims of stock-option misrepresentations inducing him to leave his prior employment and begin working for Westmed were allegedly made in 2016.

Plaintiff sues Defendant Westmed under the doctrine of *respondeat superior*, which is based in part "on the ground of public policy that where one of two innocent persons must suffer from the agent's wrongful act, it is just and reasonable that the principal, who has put it in the agent's power to commit such wrong, should bear the loss rather than the innocent third person." *Ohio Farmers Ins. Co. v. Norman*, 594 P.2d 1026, 1028 (Ariz. App.1979). In Arizona, the doctrine of *respondeat superior* contains two elements that are essential to subjecting an employer to liability for its employees' actions. The first element is that an employer-employee relationship must exist. *Lee Moor Contracting Co. v. Blanton*, 65 P.2d 35, 36 (1937). The second element is that the employees' acts for which liability is sought must have occurred within the scope and course of employment. *Baker*, 197 Ariz. at 540, ¶ 17, 5 P.3d at 254.  Defendant McKinnon is subject to individual liability only "[if] the company has invested [him as a] supervisor with day-to-day control over the company, including the right to fire, and the supervisor has in fact exercised such control to harm another." *Higgins v. Assmann Elecs., Inc*., 173 P.3d 453, 458 (Ariz. App. 2007), *see e.g., Baron v. HonorHealth,* 2020 WL 5638539, at *4 (Ariz. Ct. App. Sept. 22, 2020) (affirming dismissal of individually named supervisor where complaint failed to allege facts to support *Higgins* test for supervisory liability).

1        On November 18, 2020, the Defendants filed a Motion to Dismiss pursuant to Fed.

2 R. Civ. P. 12(b)(6) for failure to state a claim. To survive this motion, the Court looks

3 solely to the facts alleged in the FAC, and  these "factual allegations must be enough to

4 raise a right to relief above the speculative level, on the assumption that all the allegations

5 in the complaint are true even if doubtful in fact." *Bell Atlantic Corp. v. Twombly*, 550 U.S.

6 544, 555 (2007) (citations and internal quotations omitted).   All factual allegations are

7 taken as true and construed in the light most favorable to the nonmoving party, *Iolab Corp.*

8 *v. Seaboard Sur. Co.*, 15 F.3d 1500, 1504 (9th Cir.1994), and all reasonable inferences are

9 to be drawn in favor of that party as well, *Jacobsen v. Hughes Aircraft*, 105 F.3d 1288,

10 1296 (9th Cir.1997). Dismissal is appropriate if the facts alleged do not state a claim that

11 is "'plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*,

12 550 U.S. at 570).

13        Plausibility is not attained if the facts are merely consistent with his claims.

14 *Twombly*, 550 U.S. at 545, 557. "Where a complaint pleads facts that are 'merely consistent

15 with' a defendant's liability, it 'stops short of the line between possibility and plausibility

16 of entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). The

17 factual allegations in the Complaint only need to plausibly suggest an entitlement to relief.

18 *Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011). Plausibility is not probability, but

19 it is more than a mere possibility. The question at the pleading stage is whether Plaintiff

20 alleges enough facts to raise a reasonable expectation that discovery will reveal evidence

21 to support the allegations. *Id.*

22        On a Rule 12(b)(6) motion to dismiss, the Court does not resolve factual disputes

23 between parties on an undeveloped record, but instead determines whether the pleading

24 states a sufficient claim to warrant allowing the Plaintiff to attempt to prove his case. *Lee*,

25 250 F.3d at 688. This is a high standard and makes Rule 12(b)(6) motions disfavored.

26 *Durning v. First Boston Corp.*, 815 F.2d 1265, 1269 (9th Cir. 1987); *Williams v. Gorton*,

27 529 F.2d 668, 672 (9th Cir. 1976).

28

In response to the Motion to Dismiss, the Plaintiff argues the FAC states justiciable claims. Alternatively, the Plaintiff seeks leave to file a Second Amended Complaint if the Court finds the FAC lacks supporting facts. The Court will freely grant leave to amend when justice so requires. Fed. R. Civ. P. 15(a)(2).

<u>Motion to Dismiss</u>

The Defendants argue that the retaliation claim should be dismissed because the Plaintiff's allegation that he was demoted in retaliation for his disclosures fails to state a claim under Arizona law, A.R.S. § 23-1501, which only protects against retaliatory termination, and Plaintiff failed to allege compliance with A.R.S. 23-1502(B), requiring notice be given to Westmed regarding the working conditions that prompted his constructive discharge. The breach of contract claim fails because Plaintiff fails to allege the existence of a valid, enforceable contract; he has not proffered a copy of the employment agreement, and under Arizona law, employers like Westmed can make unilateral changes to compensation programs. Finally, Defendants assert that the negligent and fraudulent claims fail for lack of specificity as to when, where, and what was said by McKinnon.

First, the Kansas state law claims are dismissed. The Court considers the merits of the Motion to Dismiss under Arizona law.

In 1996, the Arizona Employment Protection Act (AEPA), A.R.S. § 23– 1501, codified Arizona's public policy regarding employment relationships. *Cronin v. Sheldon*, 991 P.2d 231, 240–41 (Ariz. 1999); *White v. AKDHC, LLC*, 664 F.Supp.2d 1054, 1061 (Ariz. 2009). The AEPA exclusively governs employee breach of contract claims resulting from termination. *White*, 664 F.Supp.2d at 1061. The AEPA displaces the common law and "codifies the at will [employment] presumption and specifies very few situations in which the presumption may be rebutted." *Id*.

The employment relationship is severable at the pleasure of either the employee or the employer unless both the employee and the employer have signed a written contract to the contrary setting forth that the employment relationship shall remain in effect for a

1    specified duration of time or otherwise expressly restricting the right of either party to

2    terminate the employment relationship. Both the employee and the employer must sign

3    this written contract, or this written contract must be set forth in the employment

4    handbook or manual or any similar document distributed to the employee, if that

5    document expressly states the intent that it is a contract of employment, or this written

6    contract must be set forth in a writing signed by the party to be charged. A.R.S. § 23–

7    1501(A)(2). In the AEPA, "[t]he word 'expressly' means in direct or unmistakable terms;

8    ... directly and distinctly stated; expressed, not merely implied or left to inference."

9    *Johnson v. Hispanic Broadcasters of Tucson, Inc.*, 2 P.3d 687, 691 (Ariz.App.2000).

10          The Defendants correctly point out that the Plaintiff fails to allege the existence of

11    any express written contract signed by both parties as contemplated by the AEPA that

12    would alter the presumptive employment at will relationship. He has alleged only an at

13    will employment relationship, which may be terminated at any time for good cause or no

14    cause. As the Plaintiff, himself, notes the only exception is firing an at will employee for

15    "bad cause—one against public policy . . .." (Response (Doc. 29) (citing *Mack v.*

16    *McDonnell Douglas Helicopter Co.,*  880 P.2d 1173, 1175 (Ariz. App. 1994) (preAEPA

17    case citing *Wagenseller v. Scottsdale Memorial Hosp*., 710 P.2d 1025, 1036 (Ariz.

18    1985)).

19          The AEPA provides that it is "[t]he public policy of this state [] that . . . [a]n

20    employee has a claim against an employer for termination of employment only if one or

21    more of the following circumstances have occurred," A.R.S. § 23-1501(A)(3), including

22    "[t]he employer has terminated the employment relationship of an employee in retaliation

23    for any of the following: . . (ii) The disclosure by the employee in a reasonable manner that

24    the employee has information or a reasonable belief that the employer, or an employee of

25    the employer, has violated, is violating or will violate the Constitution of Arizona or the

26    statutes of this state to either the employer or a representative of the employer who the

27    employee reasonably believes is in a managerial or supervisory position and has the

28    authority to investigate the information provided by the employee and to take action to

1   prevent further violations of the Constitution of Arizona or statutes of this state or an

2   employee of a public body or political subdivision of this state or any agency of a public

3   body or political subdivision." A.R.S. § 23-1501(A)(3)(c). *See also Torrez v. City of*

4   *Scottsdale,* 1997 WL 580326 (Ariz. Superior Crt. July 15, 1997) (relying on *Wagenseller,*

5   public policies expressed in federal statutes or municipal ordinances do not support a state

6   wrongful discharge claim); *Olguin v. Inspiration Consolidated Copper Co*., 740 F.2d 1468

7   (9th Cir. 1984) (same)).

8          The Plaintiff alleges that he reported to the Westmed Board of Directors that the

9   company was allegedly violating Food and Drug Administration (FDA) rules and

10  regulation and state and federal employment laws. The alleged federal rules, regulations,

11  and law violations will not support the AEPA claim.  The Plaintiff fails to allege the state

12  employment law he allegedly reported, and that this law "strikes at the heart of the citizen's

13  social rights, duties and responsibilities." *See Murcott v. Best W. Int'l, Inc*., 198 Ariz. 349,

14  357, 9 P.3d 1088, 1096 (Ct. App. 2000), as amended (Oct. 16, 2000) (relying on guidance

15  in *Wagenseller* about public policy protection for whistle-blowers from wrongful

16  discharge). The Court assumes that the Westmed Board were persons who could take

17  corrective action. *Id.* at 1097 (citing *Faust v. Ryder Commercial Leasing & Servs*., 954

18  S.W.2d 383 (Mo.App.1997) (plaintiff did not "blow the whistle" by speaking only to the

19  wrongdoer himself).

20         Under Arizona law, constructive discharge is a redressable termination under the

21  AEPA because "Arizona law allows an employee to claim constructive discharge based

22  on an employer's "outrageous conduct" or failure to remedy "objectively difficult or

23  unpleasant working conditions" that would compel a reasonable employee to resign.

24  A.R.S. § 23–1502(A) (2018)."  *Peterson v. City of Surprise*, 418 P.3d 1020, 1023 (Ariz.

25  App. 2018).  "[A]lthough constructive discharge may transform a resignation into a

26  discharge, by itself, it does not afford an employee a remedy. *Id*. (citing A.R.S. §  23-

27  1502(A) (stating elements of constructive-discharge claim that may be alleged "*[i]n any*

28  *action under the statutes of this state or under common law*") (emphasis added in

original). To prevail on a claim for constructive discharge, an employee must also prove a common-law or statutory claim for wrongful termination, *Id.*

In short, "[t]he [A]EPA limits the potential claims of an employee who has been terminated, whether directly or through constructive discharge," and "allows a former employee to sue for a discharge that violates a state statute or that is in retaliation for reporting a violation of the Arizona Constitution or a state statute." *Id.* (citing A.R.S. § 23–1501(A)(3)(b), (c)). As noted above, the FAC alleges the Plaintiff reported a state employment law violation, but fails to identify it or allege that it is the type of law which "strikes at the heart of the citizen's social rights, duties and responsibilities." There is no independent cause of action under A.R.S. § 23-1502; the constructive discharge claim brought fails if the AEPA wrongful termination claim fails. *Peterson,* 418 F.3ed. at 1023.

The Plaintiff's breach of contract claim alleges that McKinnon unilaterally changed the annual compensation plan, which resulted in changed sales territories, changed the number of sales managers by Westmed, and manipulated accounts in order to avoid paying Plaintiff and others the compensation to which they were entitled to under the terms of their contracts. As already noted, the FAC fails to allege facts to support that the annual compensation plan, the Domestic Sales Compensation Program, was an employment agreement as defined by the AEPA.

Under Arizona law, there is no "general" tort claim based on bad faith in employment termination cases. *Nelson v. Phoenix Resort Corp.*, 888 P.2d 1375, 1384 (1995). However, in *Wagenseller*, the court recognized a good faith and fair dealing exception to the general at will doctrine of employment. *Wagenseller*, 710 P.2d at 1031– 41. "In the case of an employment-at-will contract, it may be said that the parties have agreed, for example, that the employee will do the work required by the employer and that the employer will provide the necessary working conditions and pay the employee for work done. What cannot be said is that one of the agreed benefits to the at-will employee is a guarantee of continued employment or tenure. The very nature of the at-will agreement precludes any claim for prospective benefit." *Id.* at 1038.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Based on the Arizona Supreme Court's decision in *Wagenseller*, the Arizona legislature passed the AEPA, and the Arizona Supreme Court upheld the AEPA as constitutional, with the exception of the preamble, as the exclusive remedy for terminations that violate public policy statutes. *Fallar v. Compuware Corp*., 202 F. Supp. 2d 1067, 1075–77 (D. Ariz. 2002) (citing *Cronin*, 991 P.2d at 236, 242). Importantly, the AEPA does not preclude recovery of compensatory damages under federal law . . . [,] nor does it preclude wrongfully terminated employees from pursuing collateral common law tort claims related to discharge from employment, including intentional infliction of emotional distress[,] negligent infliction of emotional distress [,] interference with contractual relations[,] or defamation ..., [and] a panoply of constitutionally protected common law tort remedies remains undisturbed as fully beyond the scope of the [A]EPA." *Fallar*, 202 F. Supp. 2d at 1076 (citing *Cronin* at 241). *See e.g., White*, 664 F.Supp.2d at 1065 ("a viable claim for breach of the implied covenant may lie if a plaintiff is alleging that conduct other than the termination itself breached the covenant.")

For the reasons stated by the Defendants, the Court grants the motion to dismiss Counts I (Unlawful Retaliation: Demotion) and II (Breach of Contract), but notes that the allegations may support the AEPA retaliatory constructive discharge claim. The Response by the Plaintiff reflects that there may also be proximity in time evidence to support the retaliation claim. (Response (Doc. 29) at 3,10.) "[A] 'mere coincidence of timing' can rarely be sufficient to establish a submissible case of retaliatory discharge." *Bejarano v. Roosevelt Elementary Sch. Dist. No 66*, 2011 WL 1375655, at *4 (Ariz. App. Apr. 12, 2011) (quoting *Kipp v. Mo. Highway & Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir.2002) (quoting *Nelson v. J.C. Penney Co*., 75 F.3d 343, 346–47 (8th Cir.1996)) (stating that "the interval of two months between the complaint and [the plaintiff's] termination so dilutes any inference of causation that we are constrained to hold as a matter of law that the temporal connection could not justify a finding in [the plaintiff's] favor on the matter of causal link")). *See e.g., Czarny v. Hyatt Residential Mktg. Corp.*, No. 1 2018 WL 1190051, at *3–4 (Ariz. App. Mar. 8, 2018) (two days between

1
2
3
employee's reported violations and allegedly retaliatory act of calling for review of her sales performance raised material question of fact regarding retaliatory intent precluding summary judgment).

4
5
6
7
8
9
10
11
12
13
14
The Defendants challenge the fraud claims for lack of specificity under Fed. R. Civ. P 9(b) for failure to plead the claim with particularity. The Response suggests he may be able to comply with Rule 9(b). (Response (Doc. 29) at 14-15.) The Response asserts that the FAC "provides sufficient well-pleaded facts to establish claims for fraudulent misrepresentation, negligent misrepresentation, and promissory estoppel" but fails to cite to the record. As said by the Seventh Circuit in the now familiar maxim, "'[j]udges are not like pigs, hunting for truffles buried in briefs.'" *Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991)). Citation to the FAC would have made it evident to the Plaintiff that the fraud and negligent misrepresentation claims are asserted in conclusory fashion and do not include any of the specificity averred in the Response.

15
16
17
18
19
20
21
22
23
The Court dismisses the claims alleging negligent and fraudulent misrepresentations related to Defendants' alleged promise to give him stock options to induce him to leave his previous employment and begin working for Westmed. These alleged misrepresentations were made in 2016. An employee's claim for breach of an alleged oral or written employment contract must be brought within one year.  A.R.S. § 12-541(3); *See Fallar*, 202 F. Supp. 2d at 1075–77 (breach of employment contract barred by one-year statute of limitations); (*Lytikainen v. Schaffer's Bridal LLC*, 409 F.Supp.3d 767, 775-776 (Ariz. 2019) (bifurcating allegations and dismissing as time barred those related to employment agreement and not those related to purchasing an

24
*/////*
25
*/////*
26
*/////*
27
*/////*

28

- 9 -

interest in the bridal company); *Day v. LSI Corporation*, 174 F.Supp.3d 1130, 1155 (Ariz. 2016) (applying one-year statute of limitation to alleged promise to promote Day once hired to vice president as an inducement to get him to accept position with LSI).

      **Accordingly,**

      **IT IS ORDERED** that the Motion to Dismiss (Doc. 28) is GRANTED, with leave to amend.

      **IT IS FURTHER ORDERED** that the Second Amended Complaint may be filed within 21 days of the filing date of this Order.

      Dated this 1st day of March, 2021.

Honorable David C. Bury
United States District Judge