**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tracy D Ferren, | No. CV-19-00598-TUC-DCB |
| Plaintiff, | **ORDER** |
| v. | |
| Westmed Incorporated, et al., | |
| Defendants. | |

The Court grants in part and denies in part the Motion to Dismiss the Second Amended Complaint (Doc. 33). The case proceeds only on Count 2 under the Arizona Employment Protection Act (AEPA), A.R.S. §§ 23-1501 and 1502, for constructive discharge and retaliation for reporting consumer fraud product quality and safety issues.

Plaintiff filed this action on July 9, 2019, in the United States District Court for the District of Kansas. Subsequently, the case was transferred here because the employment grievance arose in Arizona. The Plaintiff filed a First Amended Complaint (FAC) to add Arizona law, including wrongful termination claims under A.R.S. §§ 23-1501 and 1502. On March 1, 2021, this Court granted Defendants' Motion to Dismiss the FAC for failure to state a claim, with leave to amend. "In the FAC, the Plaintiff, an employee of Westmed, allege[d] state law claims of unlawful retaliation (demotion and constructive discharge), breach of contract, negligent and fraudulent misrepresentation, and promissory estoppel under Kansas and Arizona law." (Order (Doc. 31) at 1-2.)

To recap the FAC, the Plaintiff alleged that he was promised a salary, commissions, bonuses, and stock options in 2016, which induced him to leave his job and take employment with Defendant Westmed. Allegedly, Defendants never gave him the stock options, and they reduced his sales territories and number of sales managers reporting to him so that the promised compensation never materialized. The Plaintiff alleged that he reported this wrongful conduct, which he alleged violated federal wage laws, to the Defendant's Board of Directors. He also reported to the Board that he believed there were violations of product safety (Food and Drug Administration (FDA)) regulations related to Defendant's product. Thereafter, the Defendants took retaliatory actions against him, including reducing his compensation to levels so low that he was forced to resign and was, thereby, constructively discharged. *Id.* The Court dismissed the FAC because the facts, especially those alleging he reported federal law and regulatory violations, failed to state a claim for wrongful termination under A.R.S. § 23-1501 et seq.

The Plaintiff has now filed a Second Amended Complaint (SAC), which alleges only two claims: Count 1, Promissory Estoppel and Count 2, AEPA, A.R.S. §§ 23-1501 and 1502. He adds allegations that he reported to the Westmed Board of Directors product quality and safety issues with Neovent due to its incompatibility with many neonatal ventilators and resuscitations, "leading to potentially catastrophic failures, despite Defendant Westmed advertising that the Neovent was compatible with a large array of neonatal ventilators and resuscitators." (SAC (Doc.32) ¶ 16.) He adds that he reported violations of Arizona law, which includes consumer protections and prohibitions against deceptive business practices and fraud: § 13-2202(A)(4) and (5) (Arizona's deceptive business practices statute), and § 44-1522(A) (Arizona's consumer fraud statute). He alleges that the wage law violations he reported to the Board are covered by § 23-355(A) (Arizona's employee recovery of wages statute) and A.R.S. § 13-1802(a)(1)-(3) (Arizona's criminal theft statute). (SAC (Doc. 32) at ¶¶ 17, 19.)

Defendants again respond with a Motion to Dismiss. The Court grants dismissal of Count 1, Promissory Estoppel, and denies it as to Count 2, the AEPA claims under A.R.S.

1 § 23-1501 and 1502 for constructive discharge in retaliation for reporting consumer fraud 2 violations, deceptive business practices, and fraud affecting the public health and safety. 3 *See* (Order (Doc. 31) at 4-8.) The Court incorporates its discussion of the law, here, from 4 its prior Order granting the last Motion to Dismiss. (Order (Doc. 31)).

## Count 1: Promissory Estoppel

The Court grants the Motion to Dismiss Count 1, Promissory Estoppel, because it is barred by the one-year statute of limitations. *Id.* at 9-10 (citing *Fallar v. Compuware Corp.*, 202 F. Supp. 2d 1067, 1075–77 (Ariz. 2002) (finding breach of employment contract barred by one-year statute of limitations); (*Lytikainen v. Schaffer's Bridal LLC*, 409 F.Supp.3d 767, 775-776 (Ariz. 2019) (bifurcating allegations and dismissing as time barred those related to employment agreement and not those related to purchasing an interest in the bridal company); *Day v. LSI Corporation*, 174 F.Supp.3d 1130, 1155 (Ariz. 2016) (applying one-year statute of limitation to alleged promise to promote Day once hired to vice president as an inducement to get him to accept position with LSI)).

The Court has taken a second look at the statute of limitations issue, specifically, in the context of Count 1, Promissory Estoppel, which now alleges that Defendants made representations regarding salary, commissions, bonuses, and stock options that they intended he rely on, which he did rely on, when deciding to change jobs and begin working for them. He alleges that Defendants, thereafter, manipulated the commissions and denied him other promised compensation. Plaintiff simply sat on this claim to long. It commenced in October 2016 when he took the job with Westmed, or shortly thereafter. (SAC (Doc. 32) ¶ 12.) At the latest, he allegedly discovered he would not receive the promised stock options on May 2017. (Response (Doc. 35) at 6.) He filed this case in 2019.

There is simply no case law to support the Plaintiff's request for the Court to apply the three-year statute of limitations, A.R.S.12-543, "[f]or debt where the indebtedness is not evidenced by a contract in writing" or "[f]or relief on the ground of fraud or mistake, which cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake." The Plaintiff does no more

than merely allege the promise was based on a fraudulent misrepresentation and fails again to state the wage claims with the specificity needed to allege fraud. (Order (Doc. 31) at 9.)

When two limitation periods may apply, the Court follows the more specific statute of limitation period relevant to the facts of the claim. *Monroe v. Arizona Acreage LLC,* 443 P.3d 954, 959-96 (Ariz. App. 2019). "There shall be commenced and prosecuted within one year after the cause of action accrues, and not afterward, the following actions: . . . For breach of an oral or written employment contract including contract actions based on employee handbooks or policy manuals that do not specify a time period in which to bring an action." A.R.S. § 12-541. "Employment contract" in A.R.S. § 12–541(3) should be given its "ordinary meaning." *Redhair v. Kinerk, Beal, Schmidt, Dyer & Sethi, P.C.,* 183 P.3d 544, 546 (Ariz.Ct.App.2008). That meaning is: "a contract between an employer and employee in which the terms and conditions of employment are stated." *Id.* (quotation omitted). In *Redhair,* the Court found the definition is not limited to "agreements affecting a term of employment or altering or limiting the at-will presumption," *id.* at 547 (quotation omitted); it includes "all contracts defining specific responsibilities of the employer to the employee," *id.* at 548. In other words, the one-year statute of limitations applies to any agreement related to "the nature, conditions, or duration" of employment, pursuant to A.R.S. § 12–541(3), including payment of a bonus. *Id.* at 549. The Court reaffirms its finding that the Plaintiff's wage claims are barred by a one-year statute of limitation period and dismisses Count 1, Promissory Estoppel.

<u>Count 2: the AEPA (Constructive Discharge and Retaliation)</u>

Count 2, the AEPA claim remains. It bears repeating that the Arizona Legislature enacted the AEPA in 1996, in response to *Wagenseller v. Scottsdale Memorial Hospital*, 147 Ariz. 370, 710 P.2d 1025 (1985). In short, the AEPA enumerates the circumstances for when an employee may bring a wrongful termination action in Arizona, which includes suing an employer for terminating an employee in retaliation for refusing to violate Arizona law or for reporting violations of Arizona law to the employer's management or other investigative authority. *Galati v. Am. W. Airlines*, Inc., 292, 69 P.3d 1011, 1013 (Ariz. App.

2003); A.R.S. § 23–1501(3)(c)(i)-(ii). Here, the Plaintiff alleges that he was wrongfully terminated for reporting violations of Arizona law under subsection (c)(ii), which provides: "The disclosure by the employee in a reasonable manner that the employee has information or a reasonable belief that the employer, or an employee of the employer, has violated, is violating or will violate the Constitution of Arizona or the statutes of this state to either the employer or a representative of the employer who the employee reasonably believes is in a managerial or supervisory position and has the authority to investigate the information provided by the employee and to take action to prevent further violations of the Constitution of Arizona or statutes of this state or an employee of a public body or political subdivision of this state or any agency of a public body or political subdivision."

Plaintiff alleges he disclosed to the Westmed Board of Directors information or his reasonable belief that it and its agent, Defendant McKinnon, were violating Arizona law, and within close proximity to this reporting, his working conditions, specifically his compensation was so reduced, that he was compelled to resign. The alleged proximity in time can be sufficient to raise an inference of retaliation. (Order (Doc. 31) at 8-9.)

It is undisputed that the Defendants did not fire him. Instead, Plaintiff's AEPA claim is based on § 23-1502(A), which provides: "In any action under the statutes of this state or under common law, constructive discharge may only be established by evidence of either of the following: 1) objectively difficult or unpleasant working conditions to the extent that a reasonable employee would feel compelled to resign [or] 2) outrageous conduct by the employer or a managing agent of the employer, including sexual assault, threats of violence directed at the employee, a continuous pattern of discriminatory harassment by the employer or by a managing agent of the employer or other similar kinds of conduct, if the conduct would cause a reasonable employee to feel compelled to resign." Plaintiff alleges facts supporting a claim of difficult or unpleasant working conditions. His allegations of outrageousness and discrimination are entirely conclusory and lack any factual basis.[1]

---

[1] For purposes of the Motion to Dismiss, the Court assumes that the employee notice requirements for bringing an action for constructive discharge were waived by the Defendants because they failed to comply with the employer notice requirements contained in A.R.S. § 23-1502(E). There is no basis for waiver based on outrageous conduct.

The Court finds the SAC states a wrongful termination claim based on constructive discharge, pursuant to A.R.S. 23-1502(A), in retaliation for reporting a violation of Arizona law, A.R.S. 23-1501(c)(ii) but dismisses the Plaintiffs claim of retaliatory discharge based on assertions that he reported wage violations protected by Arizona's wage law, A.R.S. § 23-355(A). The AEPA, 23-1501(B) provides: "If the statute provides a remedy to an employee for a violation of the statute, the remedies provided to an employee for a violation of the statute are the exclusive remedies for the violation of the statute or the public policy prescribed in or arising out of the statute." *Reyes v. Revlon Consumer Product Corp*., 2013 WL 1225030 at *7 (Ariz. March 28, 2013) (dismissing constructive discharge breach of contract claim premised on a violation of A.R.S. § 23-355(A); *Whitmire v. Wal-Mart Stores Inc.,* 359 F. Supp. 3d 761, 781 (D. Ariz. 2019) (finding Arizona Medical Marijuana Act (AMMA) provides private cause of action, dismissing AEPA claim as duplicitous and also because "it would not consider the parties' arguments as to whether or not the AMMA supplies the public policy for Plaintiff's AEPA claim.")[2]

The Court rejects the Defendants' attack on the AEPA constructive discharge, wrongful termination claim "because he does [not] plead and (and cannot plead) that he ever reported what would amount to a violation of any of these statutes to his superiors and thus the causal connection required for an AEPA claim, namely that an employee be terminated because he reported or disclosed a violation of a Arizona law or statue, is completely absent here." (Motion (Doc. 33) at 4.) If Defendants are arguing that the Plaintiff must allege an actual violation of Arizona law, they are wrong. An actual statutory violation need not occur; "a discharge for refusing to violate a statute or the relevant public policy underlying a statute may also give rise to a wrongful termination claim." *Harper v. State*, 388 P.3d 552, 554 (Ariz. App. 2016) (citing *Logan v. Forever Living Products Intern. Inc.,* 52 P.3d 760, 763-64 (Ariz. 2002) (en banc)).

---

[2] The Consumer Fraud Act discussed below provides a private cause of action for the injured consumer and, is therefore, distinguishable from the reported wage law violations. Only the Arizona wage laws provide a remedy to the employee Plaintiff.

Not every statutory violation supports an AEPA claim. Public policy is articulated by constitutional, statutory, or decisional law—it is not a right inherent in the at-will contract, or in any other contract, even if expressly provided. *Murcott v. Best W. Int'l, Inc.*, 9 P.3d 1088, 1096 (Ariz. App. 2000), as amended (Oct. 16, 2000) (citing *Wagenseller*, 710 P.2d at 1036). Public policy violations for whistle-blowing protection contain certain essential elements, beginning with "some 'important public policy interest embodied in the law' [having] been furthered by the whistleblowing activity.'" *Wagner v. City of Globe*, 722 P.2d 250, 257 (1986) (quoting *Wagenseller*, 710 P.2d at 1035). In part the question is whether the affirmative remedial action, i.e., whistle blowing, was "not merely private or proprietary, but instead [sought] to further the public good." *Id.* Put another way, the question is whether the whistleblowing complaints addressed an important public policy interest. This requires the alleged statutory violation reported by the whistleblower to "'strike at the heart of the citizen's social rights, duties and responsibilities.'" *Murcott,* 9 P.3d at 1096 (citing *Wagenseller* 710 P.2d at 1032 (quoting *Palmateer v. International Harvester Co.*, 421 N.E.2d 876, 878–79 (Ill. 1981)). "Although public policy need not always derive from a criminal statute, *Wagenseller* stated that the criminal code is a clear expression of state public policy." *Id.* Arizona's antitrust statutes have been found to parallel criminal statutes in some respects, including enforcement being delegated to the state through the Attorney General rather than being reserved to individual parties; penalties which go well beyond compensatory and remedial relief, with punitive (treble damages) employed for the benefit of the aggrieved private party. *Id.* at 1098 (citing *United Nuclear Corp. v. General Atomic Co., 93 N.M.* 105, 597 P.2d 290, 310 (1979) (finding Arizona Legislature enacted a Uniform State Antitrust Act in A.R.S. section 44–1401 (1974) with underlying purpose to establish a "public policy of first magnitude" in furthering a competitive economy).

The elements of a private claim under the Arizona Consumer Fraud Act, A.R.S. § 44–1522, are a false promise or misrepresentation, made in connection with the sale or advertisement of merchandise, and the plaintiff's consequent and proximate injury from

reliance on such a misrepresentation; such reliance need not be reasonable. *Watts v. Medices Pharm. Corp*., 342 P.3d 847 (Ariz. App. 2015), opinion aff'd in part, vacated in part, 365 P.3d 944 (2016). The purpose of the Consumer Fraud Act has been described as: "to protect the public from deceptive acts," requiring only the showing of intent to do the act involved, i.e., general intent, not a specific intent to deceive. *State ex rel. Babbitt v. Goodyear Tire & Rubber Co.,* 626 P.2d 1115, 1118 (Ariz. App. 1981).

Section 44-1522 is the Consumer Fraud Act, Article 7, of Title 44, Trade and Commerce. It fits squarely within the confines of the public policy discussions in *Murcott* for Article 1, Uniform State Antitrust Act, which involved the termination of a former officer of a non-profit business-membership organization for reporting antitrust violations by the board for, allegedly, engaging in unfair competition by favoring some member applicants over others. Both the antitrust and consumer fraud protection provisions protect trade and commerce by protecting fair competition. The Court notes that in the case of the Consumer Fraud Act, the fair business practice protections serve the dual public purpose of promoting fair business practices and product safety. *Cf., Salt River Project Agric. Improvement and Power Dist. v. Westinghouse Elec. Corp., 694 P.2d 198, 205–06 (1984)*(describing strict liability as reflecting public policy for safety in market place by creating disincentive to manufacturers to place defective and unreasonably dangerous products into the stream of commerce.)

In comparing the public policy antitrust discussions in *Murcott,* the Court notes that the Consumer Fraud Act also delegates enforcement to the Attorney General. A.R.S. § 44-1524. Instead of treble damages for flagrant antitrust violations, A.R.S. 44-1408(B), there is a penalty fine of not more than $10,000 for willful consumer fraud violations, A.R.S. § 1531. Lastly, there is a criminal statute that reflects the public policy to protect the public from deceptive business practices. A.R.S. (Criminal) 13-2202(A)(4)-(5) (making it a misdemeanor to commit deceptive business practices in the course of engaging in a business, occupation or profession, if a person recklessly: sells, offers or exposes for sale

adulterated goods or services, or sells, offers or exposes for sale mislabeled goods or services).

The Court finds in accord with the reasoning in *Murcott* that Arizona's consumer fraud statutes reflect public policy because they parallel some criminal statutes in some respects, including enforcement being delegated to the state through the Attorney General and penalties that go beyond compensatory and remedial relief, including a penalty fine provision. *See also* Wagenseller, 710 P.2d at 1032 (citing *Harless v. First National Bank,* 162 W.Va. 116, 246 S.E.2d 270 (1978) (finding public policy existed for applying whistle blower protection where employee refused to violate consumer protection law).

## Conclusion

The Court denies the Motion to Dismiss the AEPA claim alleging termination by constructive discharge in retaliation for Plaintiff's reporting to the Westmed Board of Directors product quality and safety issues with Neovent due to its incompatibility with many neonatal ventilators and resuscitations, contrary to its advertised compatibility, and which created the potential for catastrophic injury.

This Court is participating in an informal early-settlement pilot program for employment law cases and, therefore, refers this case for such a settlement conference. The Defendants' Answer shall be due thereafter if the case is not resolved by settlement.

**Accordingly,**

**IT IS ORDERED** that the Motion to Dismiss (Doc. 33) is GRANTED IN PART AND DENIED IN PART as to Count 2, the AEPA claim alleging termination by constructive discharge in retaliation for reporting alleged violations of the Arizona Consumer Fraud Act.

**IT IS FURTHER ORDERED** that this employment law case is referred to the Honorable Bruce G. Macdonald for an early settlement conference on July 21, 2021 at 9:30 a.m. The parties shall contact his chamber directly for further instructions regarding the settlement conference by calling Marcia Delanty, Law Clerk, at 520 205-4521.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IT IS FURTHER ORDERED** that in the event the case is not resolved by settlement, the Defendants shall Answer the Second Amended Complaint within 20 days of the settlement conference.

**IT IS FURTHER ORDERED** that NO EXTENSIONS OF TIME SHALL BE REQUETED OR GRANTED WITHOUT SHOWING GOOD CAUSE.

Dated this 19th day of May, 2021.

_____
Honorable David C. Bury
United States District Judge